nr

1   findings. What I don't agree with is the

2   conclusions they draw from that.

3   　　　　HEARING OFFICER WOODS:  But you are, too,

4   concluding she is doing well now.  You are just

5   concluding she is doing well now because of

6   these--I am just--

7   　　　　MS. SAVIT:  Yes.  She is doing--

8   　　　　HEARING OFFICER WOODS:  Well, what would I

9   find, then?  I am not sure what I am supposed to

10  do.  I am a little lost here.

11  　　　　MS. SAVIT:  The results of the finding of

12  ineligibility is that she would, unless kept out of

13  public school, return to her neighborhood high

14  school, to be returned to the mainstream, in the

15  kind of environment she was in in her last year at

16  Wilson High School, because there was a finding

17  that she is not eligible for anything.

18  　　　　She goes back into the mainstream with no

19  supports and our contention is and we would ask you

20  to find that if you strip away the supports that

21  she has been getting for the last two years, she

22  will return to the problems that she experienced in

nr

1  her last year in Wilson High School.

2        She will once again be at risk.  She will

3  cut classes.  She will fail.  She will not do her

4  work.  She will believe she is stupid.  All those

5  things that were going, that she requires a

6  supportive environment that she has been getting,

7  and that is what we are asking you to find and that

8  is the evidence we are prepared to go on.

9        HEARING OFFICER WOODS:  Where did you

10  frame the questions in your--maybe I could read

11  that.  Whether N██████ was eligible for special

12  education during 2002-2003 school year and if so,

13  whether DCPS should reimburse the parent.

14        You want to do that?  Maybe I can follow

15  that, because now you limit it to the '02-03 school

16  year.

17        MS. SAVIT:  No.  Whether she was eligible

18  at the time that she--that the issues arose.

19        HEARING OFFICER WOODS:  Well, that is your

20  question, not mine.

21        MS. SAVIT:  Right.

22        HEARING OFFICER WOODS:  So you limited

nr

46

1   your question to '02.  See, what I think what I am

2   missing--it is almost--this is how a neutral person

3   is hearing what you are saying.

4         She has been found ineligible.  That is

5   because she is doing well, and they shouldn't

6   benefit from that, because she is doing well.  And

7   I am thinking, well, when I hear that same evidence

8   that she is doing well, what am I supposed to do

9   with it.

10        MS. SAVIT:  You are supposed to evaluate

11  it in the context of why she is doing well.

12        HEARING OFFICER WOODS:  But will that have

13  to do with resolving the dispute?  That is what I

14  don't get.

15        MS. SAVIT:  Because if the only reason she

16  is making progress is because she is getting

17  appropriate programming, then you have to consider

18  what happens to her if she doesn't get that

19  programming, which is what DCPS proposed by finding

20  her ineligible.

21        HEARING OFFICER WOODS:  Okay.  I am a

22  little confused, but I think I can hear the case.

nr                                                                    47

1    It is almost like inverse logic, that I am taking

2    this case on inverse logic that, yes, I am going to

3    hear testimony she is doing well, but you have got

4    to remember she wasn't.  That is where I am lost.

5            So then what do I do?  I am not sure what

6    I do.

7            MS. SAVIT:  N██████ has attention deficit

8    hyperactivity disorder.  That hasn't gone away.

9            HEARING OFFICER WOODS:  So that is

10   tangible, then.  They should have classified.  That

11   is why I was saying the improper thing is they

12   should have labeled her ADHD OHI.  Is that what you

13   are saying?

14           MS. SAVIT:  Well, that is one thing, but,

15   see--

16           HEARING OFFICER WOODS:  See, those are

17   tangible.  Now I can put my hands in there.

18           MS. SAVIT:  They didn't really get to

19   that.  She also suffers from clinical depression,

20   which, in part, is secondary to the unaccommodated

21   ADHD.

22           HEARING OFFICER WOODS:  How about this?

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

48

1  This will help me.  For me to provide services

2  under the IDEA, wouldn't the child have to be

3  eligible?

4        MS. SAVIT:  Of course.

5        HEARING OFFICER WOODS:  Okay.  What is the

6  disability that this child is eligible as?

7        MS. SAVIT:  She has ADHD and she is

8  clinically depressed.

9        HEARING OFFICER WOODS:  Now, what would be

10  the disability classification that you are asking

11  me to find under those?

12        MS. SAVIT:  ADHD and emotionally

13  disturbed.

14        MS. RIVERA:  Hearing Officer, because--

15        HEARING OFFICER WOODS:  Hold on.  Let

16  me--because this is what I mean.  Like I have to

17  make some determination that the child is--I cannot

18  just go under the IDEA on--that is why I am at a

19  loss here.

20

21        The challenge to the independent--here is

22  how I would see it, and you can just tell me if I

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

1 am following you.  If there is a challenge to the

2 ineligibility determination, that means you deem

3 she is eligible under the IDEA.

4 　　　MS. SAVIT:  Correct.

5 　　　HEARING OFFICER WOODS:  Then I want to

6 know as what and what would be the services and

7 what that she would get if found eligible.  Then we

8 move to where she should get those services, but we

9 don't start with you go to the place and we will

10 figure out the services.

11 　　　MS. SAVIT:  No.  We are not starting

12 there.  We were forced to start there by the

13 preliminary issues.

14 　　　HEARING OFFICER WOODS:  Okay.  So where is

15 --so now we start with your attack of ineligibility

16 determination is because DCPS, despite her

17 progress, should have found her, in May 2005,

18 eligible.

19 　　　MS. SAVIT:  Correct.

20 　　　HEARING OFFICER WOODS:  As?

21 　　　MS. SAVIT:  As attention deficit and

22 emotionally disturbed.

nr

50

1    HEARING OFFICER WOODS:  And based on that,

2  they should have provided her an IEP and placement.

3    MS. SAVIT:  Correct.

4    HEARING OFFICER WOODS:  Okay.  And at this

5  point, she is receiving services as ED.

6    MS. SAVIT:  No.  She is not receiving

7  services as ED.  Nobody has assigned a code to her.

8  She is getting the services that have been

9  recommended for her by her therapist.

10    HEARING OFFICER WOODS:  So noone is going

11  to say, on your side, that she has a disability.

12    MS. SAVIT:  No.  That is what Dr. Robbins

13  is doing here.

14    HEARING OFFICER WOODS:  But she is not

15  getting services for those.

16    MS. SAVIT:  She is in a program that

17  provides the services that Dr. Robbins recommends.

18    HEARING OFFICER WOODS:  Is that based on

19  the disability?

20    MS. SAVIT:  That is the program.  It

21  happens to be the program.  The school she is in

22  doesn't ask is she disabled.  They offer a program

1   that meets her needs.

2           HEARING OFFICER WOODS:  And the

3   programming is for an ED student?

4           MS. SAVIT:  No.  It is just a school that

5   happens to meet her needs.

6           HEARING OFFICER WOODS:  Okay.  You can put

7   on your case, but here is the leap that I am being

8   asked to make.

9           How would I determine that the child is

10  under the IDEA, if she is being serviced outside of

11  the IDEA?  I don't see how I am going to make that

12  determination.

13          What are you asking me to look--you are

14  not going to tell me she is ED.

15          MS. SAVIT:  Well, if Dr. Robbins is going

16  to--

17          HEARING OFFICER WOODS:  Is going to tell

18  me she is ED.

19          MS. SAVIT:  Well, she is going to give you

20  all of the diagnoses that would qualify for an ED

21  finding.

22          HEARING OFFICER WOODS:  I see.  Okay.

nr

52

1          MS. RIVERA:  And E--hold on, Hearing

2    Officer.  She has to be--she--first of all, she has

3    to be qualified under the IDEA to make this--to

4    make this finding that this student suffers this

5    disability and it affects her academics.  That is

6    why she was found ineligible, because this--her

7    disability, no matter what it is, is not impacting

8    her academics.

9          That is why special ed exists.  It is for

10   special education, for students who are being

11   impacted because--impacted in their education by

12   their disability.

13          This is not happening here.

14          HEARING OFFICER WOODS:  But I think what I

15   am hearing the mother say is there is a reason why

16   it is not manifested right now.

17          MS. RIVERA:  Oh, because 2003, we didn't

18   recognize it?

19          HEARING OFFICER WOODS:  Right.

20          MS. RIVERA:  Okay.  Here is the issue with

21   that.  I--hold on.  Hold on.  You have talked all

22   day.

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

53

1          HEARING OFFICER WOODS:  You said it should

2   have been eligible in '02 and '03.

3          MS. SAVIT:  Should have been eligible, but

4   the last statement that was made was the reason it

5   is not affecting her now is because she wasn't--it

6   wasn't recognized in '03.  That is not really--that

7   is a non sequitur.

8          HEARING OFFICER WOODS:  Well, you have

9   given her services because of her condition--

10          MS. SAVIT:  Correct.

11          HEARING OFFICER WOODS:  --in '02-03.

12          MS. SAVIT:  Correct.

13          HEARING OFFICER WOODS:  So, in effect, I

14   thought that is true that--

15          MS. SAVIT:  Well, she should have been

16   recognized in 2003.  The parents, on their own,

17   have arranged for the services that she needs and

18   with those services, which have been effective, she

19   now is making good progress.

20          MS. RIVERA:  But they could have gotten

21   her help for whatever disability she had, whatever

22   depression or et cetera, et cetera, whatever, and

nr

54

1   could have--it could have just generally--I mean,

2   whatever disability she had, they could have gotten

3   her help for, and that--her academics and her whole

4   --I mean, I--it has to impact her academics.

5        And on top of that, our biggest issue is

6   that you can't make her unavailable in '03.  We

7   never got a chance to even evaluate her and make a

8   determination.  I mean, she was--it was with--the

9   kid was withdrawn.  She was skipping school.

10       She wasn't available.  The parents did not

11  make her available.  We had no notice that this

12  student needed special education evaluations.

13       HEARING OFFICER WOODS:  Ms. Savit said

14  they did that twice.

15       MS. RIVERA:  Did what twice?  Hold on.

16       HEARING OFFICER WOODS:  I mean, I think

17  you are getting into the evidence and you are

18  disputing it, but that--I am just trying to figure

19  out what is the question.

20       MS. RIVERA:  Hold on.  Now, you said they

21  did that twice.  Hearing Officer, they requested

22  504.  They did not request special education.

nr

55

1   There is as huge difference.

2          And this student--if--this student might

3   have been 504 and if a 504 plan had been

4   implemented, this student might have progressed

5   academically.

6          But the fact is once she was made

7   unavailable or if somebody had made a request for

8   special education services, we could have evaluated

9   and we wouldn't have to make a leap that she was

10   ineligible in '05.  So we have got to somehow

11   figure out in '05 and '03 whether she should have

12   been eligible or not.

13          She is not even--what if--she is not even

14   receiving special education services at this

15   school.  I mean, are the services that she is

16   receiving, would they be--are they services that

17   would be services as defined as special education

18   services under the IDEA?

19          I mean, you can make your child not

20   available, go to a private school for two years,

21   and then come back and say--and then we find her

22   ineligible once you re-register her and make a

nr

56

1    request, and then say, oh, so now we want

2    reimbursement for two years, when the kid was

3    unavailable for--I mean, the parents had some

4    obligation to let us know.

5         HEARING OFFICER WOODS:  Well, if that is

6    the evidence, that is the evidence.  But at these

7    point, it is just argument.  Her position is she is

8    going to establish, through the evidence, that they

9    did.

10        MS. RIVERA:  There is no letter.  There is

11   no letter in here.  There is no letter in here

12   requesting special ed.  It is not in here, no ten

13   day unilateral.  How do they get out of a ten day

14   unilateral letter?  How do they get out of

15   requesting special education services?

16        None of that are in these documents.

17        HEARING OFFICER WOODS:  Well, the mother

18   and father are sitting here.  They are going to

19   tell you.

20        MS. RIVERA:  Well, they can't,

21   testifying--the IDEA requires written notice.  I'm

22   sorry.  That is the courthouse.  I have to answer

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

1   this one.  I was supposed to be in court at 2:00.

2           HEARING OFFICER WOODS:  Well, you have

3   this set til 5:00.

4           We are going to move forward with the

5   testimony.  I think I understand your position.  I

6   am not sure what I am going to do with the

7   objection.  I don't know what that has to do

8   with--you know, we were set to 5:00.

9           MS. RIVERA:  I mean, my job title is court

10  liaison attorney advisor.  I have an emergency

11  hearing at 2:00.  I was supposed to be there

12  minutes ago.

13          HEARING OFFICER WOODS:  So what are you

14  going to do to this case?

15          MS. RIVERA:  We may send somebody else

16  down.

17          HEARING OFFICER WOODS:  Well, how are we

18  going to--now, how are we going to start over?  Ms.

19  Savit just sat here for the last hour and explained

20  her case.

21          MS. RIVERA:  Hearing Officer, those are--I

22  mean, I understand your question and I have the

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr
                                                                    58

1   same one for upstairs.  I have two job titles right

2   now.  So all I know is the superior court, always,

3   due process hearings--

4            HEARING OFFICER WOODS:  Do you want to

5   talk to Ms. Savit about settling this case?

6            MS. RIVERA:  We refuse.  We will not

7   settle this case.  We refuse.  A child that is

8   ineligible, they withdrew the student as of

9   October, and then you come back two years--no.

10           They could have at least let us know a

11  year--it is two, three years later.  No.

12           HEARING OFFICER WOODS:  Well, since it is

13  your case, what should we do, because--

14           MS. RIVERA:  If I can get a five minute

15  recess, Hearing Officer, I will be able to provide

16  some instruction or send somebody down.

17           HEARING OFFICER WOODS:  Okay.  In five

18  minutes, we will know.

19           MS. RIVERA:  I need five minutes.

20           HEARING OFFICER WOODS:  We will go off the

21  record.

22           [Recess.]

nr

59

1          HEARING OFFICER WOODS:  Okay.  We have

2  waited--we took a recess for five minutes, as DCPS

3  counsel was to return.

4          Ms. Savit, has she been in since I have

5  been out of the room?

6          MS. SAVIT:  No.  The only people who have

7  been in this room are myself, my clients, and Dr.

8  Robbins.

9          HEARING OFFICER WOODS:  Okay.  As you

10  understood, as I guess we all understood when she

11  left the room, she had received a phone call from

12  the court.

13          Were you aware that that could happen?

14          MS. SAVIT:  No; I was not.  I would note

15  the hearing was scheduled for a block from 1:00

16  p.m. to 5:00 p.m. today and no request was made to

17  reschedule it nor was any notice given ahead of

18  time that there might be an interruption.

19          HEARING OFFICER WOODS:  So your

20  understanding was you were going forward through

21  today to finish this.

22          MS. SAVIT:  Yes.  Yes.  And continuing it

nr

60

1    on Friday morning, if necessary.  I will note that

2    Dr. Robbins has come in from Annapolis and that I

3    have three witnesses sitting by the phone in two

4    separate locations available to testify by

5    telephone, who have been told to hold themselves

6    available until 5:00 p.m. today.

7            HEARING OFFICER WOODS:  Okay.  What is the

8    relief that you are seeking?  First, what is the

9    name of the school?

10           MS. SAVIT:  N████████ has attended two

11    schools since she left the District of Columbia

12    Public Schools.  In the 2003-04 school year, she

13    attended the St. James School, in St. James,

14    Maryland, and we are seeking reimbursement of the

15    costs of that placement for that year.

16           At the end of that school year, she moved

17    to the Buxton School in Williamstown,

18    Massachusetts, which she continues to attend, and

19    we are seeking both reimbursement of the costs of

20    that placement through the date of the

21    determination here and then prospective placement

22    by DCPS at Buxton, unless and until her placement

nr

61

1   is changed in accordance with due process

2   procedures.

3           HEARING OFFICER WOODS:  Williamstown.

4   Where was that?

5           MS. SAVIT:  Massachusetts.

6           HEARING OFFICER WOODS:  Massachusetts.

7   And in both schools, never an IEP.

8           MS. SAVIT:  No.  She has never had an IEP.

9   I will explain--you will hear more from the

10  teachers.  As I indicated, those are not special

11  education certified schools.

12          What they are are small schools with

13  highly structured environments, small class sizes,

14  tremendous individualized attention by the

15  teachers, willingness to work with students who are

16  having academic or other difficulties; essentially,

17  textbook programs consistent with what has been

18  recommended for N███████ to meet her needs, her

19  disability needs in order for her to make academic

20  progress.

21          HEARING OFFICER WOODS:  So the St. James

22  School in St. James, Maryland and Buxton School in

nr

62

1   Williamstown, Massachusetts.

2           Okay.  Are you staying with us or are you

3   leaving?

4           MS. RIVERA:  They haven't started the

5   court hearing yet, so they will call me.  They will

6   come down if they need me.

7           HEARING OFFICER WOODS:  Okay.  We were

8   back on the record here, because you said five

9   minutes, and I had not entertained a motion, but

10  was getting clarity on the relief and what I was

11  just told is the relief sought was for '03-04 at

12  St. James School in St. James, Maryland and the

13  Buxton School in Williamstown, Massachusetts, for

14  '04-05, and '05-06, to date, at post.

15          My understanding then of the question that

16  --and we still haven't dealt with the exhibits.  I

17  will have to come back to that.

18          But the issue for resolution is really--I

19  want to make it so I can put it under the IDEA.  As

20  I understand it, you are challenging the

21  ineligibility decision and this child should have

22  been found eligible as an ED student don't serviced

nr

63

1  accordingly.

2      MS. SAVIT:  ED and ADHD.

3      HEARING OFFICER WOODS:  That is what I

4  understand the question is.  The ineligibility

5  decision is being challenged.  The ineligibility

6  decision was made again when, Ms. Savit?

7      MS. SAVIT:  Well, the specific decision

8  that is being challenged was made in May 2005, but

9  we are also challenging the failure to act sooner.

10     HEARING OFFICER WOODS:  So you want to do

11  a Child Find, as well.

12     MS. SAVIT:  Yes.

13     HEARING OFFICER WOODS:  What was the date

14  of the May meeting?

15     MS. SAVIT:  I believe it was May 16.

16     HEARING OFFICER WOODS:  May 16.  So that

17  would be ADHD, OHI, and what was the other one?

18     MS. SAVIT:  ED.

19     HEARING OFFICER WOODS:  Okay.

20     MS. RIVERA:  So ED and OHI, other health

21  impaired.  Is that what you are saying it should

22  have been?

nr

64

1          MS. SAVIT:  Well, whatever you would

2    classify ADHD as.

3          MS. RIVERA:  Okay.  Again, Hearing

4    Officer, DCPS is going to have to, again, raise the

5    issue of notice regarding the ineligibility

6    classification.  Now they are saying the basis is

7    that we should have found her ED and ADHD or other

8    health impaired.

9          I would need my experts here on ED and

10   other health impaired.  I mean, based--I don't--how

11   am I going to prepare based on this basic statement

12   whether N███████ is currently eligible for special

13   education?

14         I obviously need experts here regarding ED

15   and other health impaired or ADHD that can make the

16   determination whether her academics or whether that

17   disability affects her academically.

18         I can't prepare based on that, on that

19   general statement.

20         HEARING OFFICER WOODS:  They have their

21   own records.  Their own records are quite clear as

22   to what they found and how they reached their

nr

65

1  decision, and we said we were challenging their

2  decision.

3  A due process hearing request is not the

4  entire testimony.  It is notice of what is at

5  issue.  It is very clear that we are challenging a

6  finding of ineligibility that was premised solely

7  on the fact that N████████ is not currently falling

8  behind in school.  That is the issue.

9  MS. RIVERA:  And, Hearing Officer, under

10  the IDEA, under Section--I think it is 300.507,

11  regarding notice, they have to tell me, because I

12  could--it could have been a speech and language

13  expert, it could have been an ED expert, an LD

14  expert.

15  I mean, they have to provide me notice

16  enough so that I am able to prepare or defend my

17  client.  That statement does not do it.  And, hold

18  on, 300.507 and let me--there is a notice

19  requirement here.  Hold on.

20  Parent notice.  All right.  Okay.  Under

21  300.507, let's see, content of parent notice.  The

22  notice required in paragraph C, Section 1 of this

nr

66

1  section, must include the name of the child, the

2  address and residence of the child, the name of the

3  school the child is attending, and a description of

4  the nature of the problem of the child relating to

5  the proposed or refused initiation or change,

6  including facts relating to the problem, and then,

7  of course, the proposed resolution.

8       She doesn't provide me any facts regarding

9  the ineligibility determination.  She doesn't

10  provide me the facts that allow me to defend

11  regarding an ED or an OH--other health impaired

12  classification.  She doesn't give me any facts

13  regarding that.

14       She just states the kid was found

15  ineligible based on--found ineligible.  She doesn't

16  say we think it should be ED or ADHD, whatever,

17  which means I have no way to know who to bring to

18  this hearing.

19       There is a notice violation under the

20  IDEA.

21       MS. SAVIT:  They have ability to read

22  their own records.  It is all in there.  Everything

nr

67

1  that--

2          MS. RIVERA:  That doesn't--

3          MS. SAVIT:  That the ineligibility

4  determination was based upon the fact that N~~_____~~

5  is making good progress at this time.  That is

6  exactly what it says.  And they have the ability to

7  read their own records, their own reports, their

8  own notes.

9          There is no question about what the issues

10  were.

11          MS. RIVERA:  Hearing Officer, that doesn't

12  eliminate their responsibility to tell me what they

13  think was wrong with the school system's decision.

14  It is clear under 507 that they have an obligation

15  of notice to let me know specifically what is wrong

16  or else I would have to bring everybody at the MDT

17  meeting to the table.

18          She just now told us it was ED and ADHD.

19  The school system has a right now to bring their

20  experts to the table, if that is what their issue

21  is.

22          I don't care what notes we have.  It is

nr

68

1   their notice that is at issue here under the IDEA.

2         MS. SAVIT: They have the burden of proof

3   of showing that they made the correct decision.

4         MS. RIVERA: That doesn't eliminate their

5   requirement under this section, Hearing Officer.

6   That is why the 300.503 exists.

7         MS. SAVIT: First of all, the notice is

8   adequate and states what happened and what--

9         MS. RIVERA: It says nothing about ED and

10   ADHD.

11         MS. SAVIT: They have the duty, in the

12   first instance, to show that they reached the

13   correct decision. This is not required to be a

14   synopsis of the testimony. It is to put them on

15   notice so that they can find out what happened and

16   how they are going to sustain it.

17         It is their burden of proof that they

18   acted correctly. There is no specific level of

19   detail that is required and if you read the entire

20   due process request, it is quite clear what are the

21   issues in the case.

22         There are facts about how we got to this

nr

69

1   point.

2         MS. RIVERA:  Hearing Officer, you weren't

3   even clear on what that issue was.  How do they

4   expect me--I mean, we had to sit here for the last

5   two hours just to get that particular issue out

6   regarding what was wrong with the ineligibility

7   determination.

8         She has--they have not met this

9   requirement.  Why don't--the parent does not get to

10  just disobey or disregard the IDEA.  It

11  specifically states they must provide facts.

12        They provided facts regarding everything

13  else in here, but on this particular issue that I

14  have to defend on, I was not given notice that

15  there was an issue regarding ED or ADHD or other

16  health impaired.

17        I am allowed to bring my experts in.

18  There is not enough notice regarding that.

19        HEARING OFFICER WOODS:  The statement of

20  the facts don't really mention that your challenge

21  to ineligibility was they didn't determine her

22  eligible as ADHD or OHI.  Her position is how would

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

70

1   they know that that was your challenge, if you

2   didn't state it, and does the law require you to

3   describe the facts upon which your claim is based.

4        MS. SAVIT:   I mean, do we have to give

5   every single fact?   No.   I could file a 50-page

6   memorandum.

7        There is--

8        MS. RIVERA:   Two words.   Two words would

9   have given me notice.

10       HEARING OFFICER WOODS:   You know, your

11  facts are basically she is doing well and so their

12  decision--

13       MS. SAVIT:   No.   Well, our facts were,

14  first of all, a description of the problems that

15  she was experiencing during her last year in public

16  school, including the fact that she had emotional

17  illness, and then that DCPS did not, at that point,

18  do anything to find out what was going on.

19       Then we said later that we were

20  challenging the ineligibility finding.   That was

21  premised solely on her current status.

22       There is no need to put in every single

nr

1   thing.   They were very clear about what the issues

2   were at the MDT meeting.   We felt they reached the

3   wrong conclusion, but there was consideration at

4   the MDT meeting of the various disabling conditions

5   that could have been found here.

6         HEARING OFFICER WOODS:   Even in your

7   issues statement, you state whether N███████ is

8   currently eligible for special education and if so,

9   whether the program which she is enrolled in is

10   appropriate for her.   Even there you don't say

11   eligible as.

12         In other words, you are just saying--how

13   would they know eligible as what?   MD, MR, ED?

14         MS. SAVIT:   There is a record here.

15         HEARING OFFICER WOODS:   No, no.   But the

16   burden, she is saying, is you are to do that in

17   your hearing request.

18         MS. SAVIT:   But the burden is not on us.

19   The burden is on them.   The burden is on us simply

20   to initiate the process.   The burden is on them to

21   show that they reached a correct decision.

22         HEARING OFFICER WOODS:   No.   The part of

nr

72

1    the law that she did read said that the parent has

2    to--what notice the parent has to give.

3              MS. SAVIT:    The parent simply has to

4    give--

5              MS. RIVERA:    The 300.507.

6              MS. SAVIT:    I know.

7              HEARING OFFICER WOODS:    That is what she

8    is saying.    Did the parent give that notice?

9              MS. SAVIT:    I understand.

10             HEARING OFFICER WOODS:    That isn't their

11   burden.

12             MS. SAVIT:    A description of the nature of

13   the problem of the child relating to the proposed

14   initiation or change, including facts relating to

15   the problem.    It does not say that the specific

16   disabling condition has to be identified in those

17   words.    It doesn't say that.

18             MS. RIVERA:    It says facts relating to the

19   problem.

20             MS. SAVIT:    The problem.

21             MS. RIVERA:    You provided me no facts

22   related to the problem.

nr

73

1        MS. SAVIT:   We provided facts showing what

2   her educational problems were.

3        MS. RIVERA:   No.  AD--no.

4        HEARING OFFICER WOODS:   It seems like the

5   hearing request says the problem is she needed to

6   be determined eligible for services. The facts are

7   not there.  So what is it that you are saying would

8   be the basis for that?  Because they should have,

9   based on the evaluations--that is why I started

10  with is it the evaluations.

11       What is it that you are saying they should

12  have looked at differently?  Is it they should have

13  looked at your psychologist?  That is what they

14  mean by the facts.

15       In other words, what are you saying they

16  should have done that they did not do?  That is

17  what the law means by it, because they don't know.

18       In other words, just saying the child is

19  not determined eligible, how do they know how to

20  prepare for that?  What are you saying they should

21  have done?  That is how they prepare.

22       MS. SAVIT:   We are saying they should have

530

nr

74

1   --we say right here, they should have assessed her.

2   They should have recognized the request for

3   services.  They should have assessed her, and then

4   they should have provided services.

5           The label of a specific disability is

6   secondary to the need for services.

7           HEARING OFFICER WOODS:  I thought they did

8   assess and determine her ineligible.

9           MS. SAVIT:  No.  We said initially they

10  did not.  They did assess later and then they

11  determined her ineligible and they didn't deal with

12  what the particular disability might be, because of

13  the conclusion that they reached.

14          HEARING OFFICER WOODS:  Okay.  Let's stick

15  with the narrow here at this point.  Are you saying

16  you stand on your hearing request, that it does

17  describe the facts related to why the school

18  determined her--

19          MS. SAVIT:  I think it does.  If you have

20  an issue, I can amend it.

21          HEARING OFFICER WOODS:  No.  She raised

22  the issue.  I am just to decide it.  It is up to

nr

75

1   you.  I am asking you first, before I decide it, do

2   you want to stand on that or do you want to talk

3   with--if you leave it to me, I will rule.

4           I am just saying do you all want to leave

5   it to me to determine are those facts related to

6   the problem that you describe sufficient to satisfy

7   300.507.

8           MS. SAVIT:  I will stick with my point.

9           HEARING OFFICER WOODS:  And let me make

10  sure that the--because I know that the parents are

11  probably thinking what in the world are these

12  lawyers talking about.

13          Let me put the posture, as I understand

14  it, at this point.  It is the procedural violation

15  being asserted at this point.  This in no way deals

16  with the merits of the case.

17          The procedural violation is what DCPS is

18  now saying is that when the parent files a due

19  process hearing request, there is a requirement

20  under the law to not only state the problem, but

21  describe the problem, the facts upon which the

22  problem is based.

nr

76

1           What DCPS is raising, when you look at the

2    parents' hearing request, it does challenge

3    ineligibility, but there are no facts related to

4    what are you claiming was wrong with that decision,

5    and their assertion is it needs to be specific.  I

6    am challenging because the child should have been

7    found eligible as--it probably has to start there,

8    your feeling the child needed to be determined

9    eligible as something.

10          She is saying you didn't say what the

11   disability classification is, or, for example, the

12   evaluation was not comprehensive upon which they

13   used to make that decision.

14          In other words, you are supposed to tell

15   them, what are you saying was wrong with the fodder

16   that they used in making their decision, not we

17   just disagree with the decision.  That is her

18   challenge.

19          At this point, I haven't ruled on whether

20   that is true or not.  I just sort of walked your

21   attorney through, well, do those facts support your

22   position.  Based on what I am hearing now, it does

nr

77

1    sound as new things you are telling me now that

2    aren't stated there.

3         You feel that those things are covered

4    there.  Then I will just rule.  If you think they

5    are not, then you could consult with your client

6    and you all can decide what you want to do.

7         Let me say this, too.  This young lady has

8    --this apparently--I know you are going to disagree

9    with this, because this is like it is a three year

10   situation.  I am not sure.  I know you may disagree

11   with that.

12        MS. RIVERA:  For them, yes.  It is three

13   years.

14        HEARING OFFICER WOODS:  So we need to move

15   this, if there is any changing of the date, to get

16   this case heard as quickly as possible.

17        Is she in school right now?

18        MS. SAVIT:  Yes, she is.

19        HEARING OFFICER WOODS:  Still in

20   Massachusetts.

21        MS. SAVIT:  Yes, she is.

22        HEARING OFFICER WOODS:  Okay.  Why don't I

534

78

1   give you the time to--and, again, it is just the

2   procedural challenge, not the merits.  It has

3   nothing to do with the merits.

4        MS. SAVIT:  We haven't reached the merits.

5        HEARING OFFICER WOODS:  Pardon me?

6        MS. SAVIT:  It is very clear to us that

7   the merits have not been reached.

8        [Recess.]

9        HEARING OFFICER WOODS:  We will get back

10  on the record here.  We are reconvening our case of

11  N██████ G████.

12       We took a break with a motion pending to

13  require a more definite statement of the parents'

14  hearing request with regard to the nature of

15  the--the facts upon which the problem was based,

16  and we have just had an opportunity for Ms. Savit,

17  the parents' counsel, to meet with her clients and

18  I am not sure if you two had a chance to meet, but

19  we will just take it from wherever you left off.

20       Are there any thoughts you want to share

21  with the Hearing Officer?

22       MS. SAVIT:  We discussed at some length

nr

79

1  the notice and the other issues.  We do believe the

2  notice is adequate under the rules.  We do not

3  believe that DCPS was inhibited in its ability to

4  prepare.

5        Obviously, DCPS was able to identify

6  issues that were not even contained within the four

7  corners of the due process notice.  DCPS raised the

8  issues of whether a ten day notice had been given

9  and whether N███████ had been withdrawn from school

10 and so forth, none of which were contained.

11       So obviously it was able to prepare.  We

12 also believe that the notice, being essentially the

13 functional equivalent of the complaint in a court

14 proceeding with regard to giving notice, general

15 notice of what the issues are and then you prepare

16 your case, which is the way it needs to be read not

17 only on its own, but in the context of the records

18 that are available to the school and to the five

19 day disclosures, which I think the issue is

20 extremely clear.

21       I also note that DCPS was able to identify

22 witnesses in the disclosures and, also, we arrived

nr

80

1    here today prepared to go forward.  We brought in

2    Dr. Robbins and, as I indicated, I have witnesses

3    standing by telephones in other parts of the

4    country.

5         So we believe the notice is adequate.  But

6    if it is ultimately the Hearing Officer's

7    determination that the notice is not adequate, we

8    would ask for an opportunity to supply whatever

9    detail is considered to be missing and we would ask

10   that the hearing be reconvened as soon as possible.

11        As you correctly observed, N▆▆▆▆ is

12   entitled to a decision on the merits and we would

13   like to get that as soon as we can.

14        HEARING OFFICER WOODS:  Your thoughts?

15        MS. RIVERA:  300.507 has not been met, not

16   in any way, shape or form.  The IDEA is clear that

17   we be given notice.  We were not.  You know, the

18   notice of the witnesses that I gave were

19   specifically--and, also, my documents specifically

20   related to the withdrawal and the ten day notice

21   requirement under the IDEA.

22        The IDEA is clear, 300.507, that I would

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

81

1    need to bring in an ED expert, our ED specialist or

2    an LD or an autism expert, whichever, you know,

3    once I was put on notice as to what was deficient

4    regarding the ineligibility notice, and that just

5    wasn't give to us.

6         So they need to amend their hearing

7    request and provide appropriate facts so that DCPS

8    is able to defend on this issue.

9         HEARING OFFICER WOODS:  Anything further

10   in terms of--now, the risk you take is you put it

11   in my hands and you get option two.

12        MS. SAVIT:  I understand that.

13        HEARING OFFICER WOODS:  Okay.

14        MS. SAVIT:  As I said, we think that--

15        HEARING OFFICER WOODS:  And that is one of

16   the reasons I gave you the recess, so you don't

17   take risks.

18        MS. SAVIT:  We feel that this is a red

19   herring, that DCPS basically boxed in a hearing day

20   on the attending notice issue, we didn't do that,

21   they were looking for other procedural problems and

22   then finally latched onto one, and we think that

nr

82

1   this is not at all an issue.

2           But all this really is is about having

3   prepared only on one issue that did not achieve its

4   desired result.

5           Nevertheless, the issue has been raised

6   and an attorney has to recognize that even if the

7   attorney believes we have come and should go one

8   way, that other people might not agree and so we

9   would simply say that it is your decision that

10  additional information is required, that we be

11  given an opportunity to provide that information,

12  and we be given a clear understanding of what

13  people think is missing, because I think that is

14  part of the obligation.

15          If there is a claim that there is not

16  enough, then what is not enough needs to be

17  identified, and, like I said, we reconvene as soon

18  as feasible.

19          HEARING OFFICER WOODS:  The Hearing

20  Officer will grant DCPS' motion.  The Hearing

21  Officer does find that the hearing request does not

22  meet the requirements of 300.507(2)(4), and the

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

83

1 Hearing Officer is going to explain his ruling in

2 just a moment.

3        Impartial due process hearing, parent

4 notice.  This particular provision is specific to

5 the parent, not DCPS.  It basically sets out the

6 requirements of what the parents must include in

7 their notice.

8        The specific provision that is being

9 challenged is the part two, which says content of

10 parent notice.  The Hearing Officer will read, with

11 emphasis on the wording.

12        "This notice required in paragraph (c)(1)

13 of this section must include."  I have no

14 discretion.  It must include "the name of the

15 child, the address and residence of the child, the

16 name of the school the child is attending," and the

17 part that DCPS is challenging is part IV, "a

18 description of the problem of the child relating to

19 the proposed or refused initiation or change,

20 including facts relating to the problem."

21        It must include, not should include, it

22 would be nice to include, it is okay to include.

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

84

1  The law is very clear.  It must include that

2  information.

3       That is equally--that is very important

4  here in the District of Columbia.  It is one of two

5  states in the country that carries the burden of

6  proof in a case under the IDEA.  Most states, the

7  burden would be on the parent, but in the District

8  of Columbia, the burden is on the District.

9       So in holding the District to its burden,

10  they would have to know what they are defending

11  against and to know what they are defending

12  against, this Hearing Officer requires specificity,

13  which is why he took the time at the beginning of

14  the hearing, because even the Hearing Officer was

15  unclear as to what the concern was.

16       That is usually a good sign that there is

17  a problem with the hearing request.  If the person

18  who is going to decide the case is unclear, that is

19  usually a very good hint that there is something

20  wrong here, and that is another reason why I

21  excused myself.

22       The other concern, I think, that is

nr

85

1    equally important is that now we are operating

2    under the Individuals with Disabilities Education

3    Improvement Act of 2004.  Congress has modified

4    this existing statute back in December of 2004.  It

5    didn't go into effect until July 1, 2005.

6         So it gave the counsel for both sides six

7    months to prepare.  There are no regulations yet

8    under this particular law, because they are still

9    planning those regulations, but I can say that

10   under the statute, as it has been enacted by

11   Congress, this provision remains, but to make it

12   more strenuous, they indicated that the Hearing

13   Officer cannot amend the hearing request at the

14   table.

15        If it was not included, you are not

16   authorized, Hearing Officer, to make any changes to

17   that hearing request once the hearing convened.

18   You either dismiss it or whatever you are going to

19   do, but you cannot make changes to the hearing

20   request.

21        It is in that background that the Hearing

22   Officer has to hold the parties to the law.  I

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

86

1  think that is fair.  The procedural requirements of

2  the IDEA were going to be the issue before this

3  Hearing Officer with respect to whether DCPS

4  complied.

5       So the Hearing Officer has to hold the

6  parent responsible with those provisions that apply

7  to the parent.

8       I would also say this, just to show you

9  how serious this has become.  This is how Congress

10  has dealt with it.

11      When they changed the law, they even knew

12  that these hearing requests were not clear.  They

13  are now allowing challenges to the hearing requests

14  before you come to due process hearing.  They just

15  want it out of our hands.

16      Look, if you don't have a clear case

17  before you, it shouldn't be in your hands.  So what

18  happens now, when you file the hearing request,

19  DCPS has .15 days to challenge it before it gets to

20  the hearing under the new law.

21      So now it gets ferreted out.  So it really

22  doesn't come to the table where we have to figure

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

nr

87

1  out, well, what is it that we are supposed to do.

2          I am giving you all that background

3  because this is a problem and, obviously, Congress

4  saw it, and you see all these buffers that they are

5  putting in place, because as you could tell from

6  this hearing, we spent an hour trying to figure out

7  what the question is, and we should not have to

8  spend an hour trying to figure out what the

9  question is.  The question should be clear.

10          I don't particularly mind it, personally,

11  because for me, it is always clearer, when I talk

12  to the attorneys, to understand what they meant by

13  what they said, in case I got it wrong.  But in

14  this particular instance, I think Ms. Rivera is

15  correct that there is nothing in this hearing

16  request that I could find even how I could fit it

17  under the IDEA.

18          Even the way it is worded, that has

19  nothing to do with disability under IDEA, services

20  under the IDEA, specialized instruction under the

21  IDEA.  It seems to be worded as if the child needed

22  something, she got it.  DCPS now realized that and

nr

88

1   they don't feel she needs any service.

2       That is where I am stopped.  I am not sure

3   what I do from that point, because in order for me

4   to function, I have to be under the IDEA.  Someone

5   has to tell me there was a disability.

6       Someone has to prove to me that there is a

7   disability and this child is in need of services.

8   Then, only then do we move to placement.  We don't

9   start with placement and then figure out if there

10  is going to be a need for services.  You have to

11  begin with the services and then find and tailor

12  the education.

13      This seems to work in the reverse.  The

14  placement is good and the child should be kept

15  there, because DCPS should have--and, again, I am

16  lost at what, they should have what.

17      So I think the only thing that really is

18  left, with now the understanding of how serious

19  Congress has taken the hearing request, in, number

20  one, Hearing Officer, you can't change it at the

21  table, eliminated that authority.

22      So if I ferret out the issues and even if

nr

89

1   I ferret them out and they say, well, that one is

2   not in there, I have to get rid of the case.  I

3   can't move on, because I can't amend it.

4           Second, that they allow challenges to the

5   hearing request before due process.  Plus, the law

6   is very clear that the parent "must include."  The

7   Hearing Officer feels he has no choice but to read

8   the hearing request as it is now written and

9   conclude that it does not meet the statutory

10  requirement of parent notice, and, therefore, the

11  case would be dismissed.

12          However, what I would like to do, in light

13  of the fact that the case has or the concern of the

14  parent has existed for three years, is to not

15  necessarily have the parent to have to run the

16  gauntlet again.

17          And I know it is going to get objected to,

18  but that is where I would be at this point, if that

19  could be a consideration.  Again, it makes it

20  difficult now, and that is why I got myself out of

21  the room, because now you two could have discussed

22  that and you didn't.

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

90

1          What are your thoughts about me not having

2     them start over, but moving forward where we are,

3     with just a different date and time to amend?

4          MS. RIVERA:  We object to that.

5          MS. SAVIT:  Let me respond.  This is

6     not--this case is not under the new IDEA.  The

7     hearing request was filed before IDEA 2004, which

8     is why whatever restrictions there are don't apply.

9          If you are going to apply a rule that says

10    the Hearing Officer can entertain amendments at the

11    hearing, then you also have to apply the rule that

12    says they should have responded immediately to the

13    hearing request and objected to it, which they

14    didn't do.

15         HEARING OFFICER WOODS:  I wasn't say I was

16    holding you to that standard.  I said now that the

17    law has been changed, this is how difficult it is

18    to deal with that issue and we are under the IDEA.

19    You filed the case the day before the IDEA came

20    into effect.

21         What law would I be applying if the old

22    law didn't exist as of July 1?

nr

91

1    MS. SAVIT:  It is, again, the procedural

2    requirements.

3    HEARING OFFICER WOODS:  This is a

4    procedural requirement.

5    MS. SAVIT:  Of the old law.  That is

6    right.

7    HEARING OFFICER WOODS:  What would invoke

8    the procedural requirement?

9    MS. SAVIT:  This was filed under the old--

10    HEARING OFFICER WOODS:  No, no.

11    MS. SAVIT:  --IDEA.

12    HEARING OFFICER WOODS:  You can brief

13    that.  I have already looked at the law in this

14    particular area.  Congress and the law is very

15    clear.  Let me make sure this is clear to the

16    parents.

17    Number one, I did not hold you to the

18    IDEIA.  I gave you background.  I said Congress has

19    made it even more stringent with regard to this

20    particular provision.  Whether they add to it, this

21    is what they added.

22    They said that not only must you do this,

nr

92

1  but, Hearing Officer, you can't amend it at the

2  table, and, parent, DCPS, you can challenge the

3  hearing request.  I gave you that for what is

4  happening now.

5          Now, let me ask you the other question.

6  Are you operating under the IDEA?  Of course you

7  are.  Here is why.  You filed the request on June

8  30, with the knowledge, counsel did, maybe parent

9  didn't, that on July 1, the law would change.

10         Congress knew that.  That is why they gave

11 you six months out.  It wasn't like the law changed

12 while the case was pending.  The law had been

13 enacted of December of 2004.  It just became

14 effective on July 1, 2003.

15         My understanding of the law in the

16 District of Columbia, unless there is a reason why,

17 when the law became effective, why you wouldn't

18 apply it when it became effective, particularly

19 when this is six months out.

20         Now, what we have done has been very

21 careful in trying not to add new requirements.  For

22 example, I didn't require you to go to a resolution

nr

93

1   meeting.  There are certain provisions that

2   wouldn't make sense to apply.  But I cannot operate

3   here as if the law doesn't exist, when it does

4   exist.  This is September 14.

5        How could I say that the law of July 1

6   would not be applicable to a hearing--when would it

7   be applicable?  December?  Congress gave us six

8   months.

9        But I am not holding you to that standard.

10  I am holding you to the standard of the law that I

11  read that exists today, and the law that exists

12  today is very clear, and I say it again, the notice

13  required by the parent of this section must

14  include.

15       To me, I have no discretion.  Either it

16  meets it or it doesn't.  I just added to that

17  Congress is making that even clearer under the '04

18  Act.

19       A, you can't change it at the table.  So

20  if it wasn't clear, too bad, Hearing Officer.  Not

21  too bad, parent.  Too bad, Hearing Officer.

22  Because, typically, if they agree, we can make the