nr                                                              211

1  weeks later that she was directed to the care
2  center, at which point the process started, and,
3  certainly, at minimum, those five weeks are
4  chargeable to DCPS, but really the more important
5  issue is the delay for 2003 to 2005. It should
6  never have gotten to 2005.
7         Evaluations under the regulations are
8  supposed to draw upon information from a variety of
9  sources, including aptitude and achievement tests,
10 parent input, teacher recommendations, physical
11 conditions, social and cultural background, and
12 adaptive behavior, and all information gathered
13 from all sources is supposed to be carefully
14 considered. That is Section 300.535 in the
15 regulation.
16        DCPS has artificially constricted its
17 consideration of information to that which is, in
18 its view, current, i.e., that school year.
19        Although, obviously, one must look at that
20 school year, there is nothing in the law that says
21 that is the only thing you look at, and, certainly,
22 with a student like N_____, the historical

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

1   information must be considered relevant.
2           Finally, as far as the parents' choice, it
3   is correct that neither St. James School nor Buxton
4   has a special education certification, and, of
5   course, under the Carter case, decided over ten
6   years ago by the United States Supreme Court, it is
7   not required that the parents place the student in
8   a special education certified school or one that
9   would meet the school system's requirements if the
10  school system itself has failed to provide a free
11  appropriate public education for the student.
12          So given that DCPS has defaulted in its
13  obligations to N███████, her parents cannot be
14  charged with doing the best they can under very
15  difficult circumstances, as long as the schools
16  they found for her met her needs.
17          And her needs are such that they can be
18  met in what one would consider a regular education
19  school that provides the appropriate environment
20  for her. That is the clear message from Dr.
21  Robbins and there really doesn't seem to be much
22  disagreement from DCPS on that issue.

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

nr                                                                 213

1          N▇▇▇▇ needed the kind of nurturing
2     environment that would allow her to feel safe
3     enough to deal appropriately with a general
4     education curriculum and those are the two schools
5     that her parents found for her, and I commend to
6     you the affidavits of Sandra Pollack from St. James
7     and of the Gail Pilar [ph] and Edward Gale from
8     Buxton, who have explained in great detail exactly
9     what both of those schools do and how they met
10    N▇▇▇▇ needs, and all three of them have
11    observed that they are aware of Dr. Robbins'
12    recommendations for N▇▇▇▇ and that that is
13    precisely what their schools provide, without any
14    special modifications, because their mere existence
15    meets N▇▇▇▇ needs.
16         So they found for N▇▇▇▇ what she needs
17    and there is no reason why she should not be placed
18    there.
19         So in sum, I think there are two separate
20    issues. The first one is what happened in 2003.
21    Did DCPS drop the ball? We think it is fairly
22    clear that they did. And if one finds that, then

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

nr                                                                          214

1   everything that flows from that really is
2   chargeable to DCPS.
3           So we don't really need to get to the
4   second issue, which is what happened in 2005, but
5   if we do need to get to that second issue, then the
6   answer is you have to look at how N█████ is doing
7   in the context of what is being provided for her,
8   and the fact that she is receiving special
9   education now or what is, for her, special
10  education, does not mean that she doesn't need
11  special education.
12          Therefore, the determination in May 2005
13  that she was not disabled and not in need of
14  special education flowed from an incorrect premise
15  as to the kinds of information that should be
16  considered and it should be rejected.
17          So we would ask that she be found eligible
18  under IDEA for special education; that that
19  eligibility should have been established no later
20  than the end of the 2002-2003 school year; that
21  DCPS failed to meet that obligation and that her
22  parents subsequently found appropriate placements

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

1   for her, which should be funded by DCPS, until the
2   placement are changed pursuant to proper procedures
3   or N▮▮▮▮▮ earns her high school diploma, which she
4   actually will be doing most likely this year.
5           Thank you.
6           HEARING OFFICER SMITH:  Thank you,
7   everyone.
8           MS. HARRIS-LINDSEY:  Can I?
9           HEARING OFFICER SMITH:  Okay.
10          MS. HARRIS-LINDSEY:  Just a couple points
11  I want to make, because I--what appears to be
12  glaring here is--I have heard Ms.--only because Ms.
13  Savit said it about three or four times.
14          DCPS is not denying this student has a
15  disability.  I don't think we have ever refuted the
16  disability.  What we have said is she doesn't
17  qualify under IDEA as a student with a disability,
18  which is clearly set out as a student requiring
19  special education and related services.
20          Somewhere in the testimony of these
21  witnesses, the special education component, where
22  the student doesn't require, and the expert

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

1  indicated that what she needs are accommodations
2  and she did not indicate that--Dr. Robbins did not
3  indicate that N――― needed special education or
4  specialized instruction.
5      And there was an attempt to align
6  curricular modifications with special education,
7  but even Dr. Robbins said she doesn't require
8  curricular modifications.  Accommodations, which
9  would mean she is not eligible under IDEA for--as a
10 student with a disability.
11     So we are not--so we don't refute that she
12 has these disabilities.  But, also, there are many
13 students with ADHD that don't qualify for
14 specialized instruction, for many reasons,
15 medication or whatever.
16     But we don't even get there, because the
17 student clearly is not in need of special
18 instruction--excuse me--special education.  So she
19 doesn't meet the two prongs under IDEA.
20     Also, there was--somewhere in here, there
21 was--I think Ms. Savit said that we don't know the
22 reason why--Wilson doesn't know the--didn't--the

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

nr                                                                  217

1  reason for N███████ grades, and the testimony was
2  clear that she wasn't present for learning.  If you
3  don't go to class, you will get an F.
4          Now, if N██████ was in class and failed,
5  then that is different, because you have the
6  ability to and in class and you can't explain why.
7  The student wasn't present for learning.  You are
8  not present.
9          So the absence is--the report card is
10 telling, in and of itself.
11         Lastly, I think the presentation of Buxton
12 as the perfect environment, it is skewed, because
13 she indicated that there is an argument that she
14 had--there is oversight and there is small setting
15 and there is attention, but the expert indicated
16 that she was a substance abuser, alcohol, up at the
17 small private school, the same issue that was
18 arising in the great big public school setting or
19 at home, whichever, wherever this environment, when
20 she was here.
21         So I think, also, that has to be
22 taken--there are little minute issue--points that

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

1  come out.  But I just bring that out just to make
2  sure that the Hearing Officer takes that into
3  consideration, but I do agree the Hearing Officer
4  can find the student eligible for special
5  education, but based on the record, I mean, yes,
6  can make--can make--you can make the eligibility
7  determination, but it has to be based on the record
8  and I think the record is clear the student doesn't
9  meet the qualifications of IDEA.
10         HEARING OFFICER SMITH:  Thank you very
11 much.  We finally got through this.  It is 4:00.
12 Have a good weekend.
13         We have concluded the case of N███████
14 G█████.  Today is January 13, 2005.  The time is
15 3:49.  The case is submitted.
16         [Whereupon, the hearing was concluded.]
17                        - - -

219

# CERTIFICATE

I, hereby certify that the tape recording represented by the foregoing pages were transcribed by me; that the foregoing transcript is a correct and accurate record of the proceedings to the best of my knowledge, ability and belief.

*Natalie Renner*
NATALIE RENNER

TRANSCRIBER