# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **MANUEL GOMEZ, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Civ. Action No. 06-312 (EGS)** |
| | : | |
| **DISTRICT OF COLUMBIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

_____

## DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, through counsel, respectfully move this Court to grant summary judgment in their favor in the above-captioned case. As established by the administrative record, the accompanying supporting memorandum and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1400 et seq., were entirely appropriate.

Respectfully submitted,

LINDA SINGER
Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

_/s/ Veronica A. Porter_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**July 27, 2007**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                        |   |                              |
|----------------------------------------|---|------------------------------|
| **MANUEL GOMEZ, et al.,**              | : |                              |
|                                        | : |                              |
| **Plaintiffs,**                        | : |                              |
|                                        | : |                              |
| **v.**                                 | : | **Civ. Action No. 06-312 (EGS)** |
|                                        | : |                              |
| **DISTRICT OF COLUMBIA, et al.,**      | : |                              |
|                                        | : |                              |
| **Defendants.**                        | : |                              |

_____

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

1.  Plaintiff N.G. is currently a 20-year old college student.  At the time the events occurred that gave rise to the complaint, N.G. was a 15-year-old 10th grader attending Wilson Senior High School ("Wilson") in the District of Columbia.  *See Administrative Record filed herein June 9, 2006 ("AR"), p. 95.*

2.  Prior to attending Wilson, N.G. was an excellent student at Deal Junior High School. *AR, pp. 102, 111-112.*

3.  In December, 2002, and early January, 2003, N.G.'s parents requested assistance from N.G.'s Honor's Algebra teacher to help N.G. improve her algebra grade.  Her teacher offered to assist N.G. if she were willing to stay after school, and also suggested that N.G. attend the math center.  The teacher also mentioned that N.G. had trouble paying attention in class "especially when she sits next to [a particular student]." *AR, pp. 207-209.*

4.  On January 8, 2003, Wilson informed Plaintiffs, that N.G.'s grades were poor and she would be removed from the Wilson International Studies Program ("WISP") if she did not raise

her grades to a 2.0 grade point average.  Wilson offered to meet with N.G. to review her grades with her.  *AR, p. 206.*

5.  In January, 2003, Alexandra Cargo, a clinical psychologist, conducted a psychological and educational evaluation of N.G.  Cargo's evaluation stated that N.G. skips class, "talks a lot" at school and tends to "get distracted by her peers."  Cargo attributed her poor grades to excessive absences and missing assignments.  *AR, p. 211.*

6.  N.G. informed Cargo that when she "cuts" class she is always with a friend and they generally go out for food or to someone's house.  *AR, p. 212.*

7.  N.G.'s cognitive functioning tests found her to be in the superior range of intellectual aptitude.  *AR, p. 212.*

8.  In her attentional and organizational skills, N.G. was found to "not strongly match either the normal or ADHD population " *AR, p. 214.*  Cargo concluded that although N.G. exhibited some mild weakness in this area, "she did not meet the criteria for a formal diagnosis [of ADHD]."  *AR, p. 219.*

9.  Cargo concluded that academically, N.G.'s skills "range from average to superior for her age and grade level."  *AR, p. 219.*

10.  In a letter dated April 23, 2003, Plaintiffs informed Wilson that N.G. was hospitalized stating, "We realized in the last couple of weeks, with professional help, that she has been very depressed for many months now, but keeping it to herself far too effectively."  Plaintiffs requested help to "ensure that she completes all her assignments in order to rescue what we can of this school year."  *AR, p. 226.*

11.  In an April 26, 2003 letter, Plaintiffs requested a meeting with N.G.'s teachers to prepare a "504 plan".  *AR, p. 227.*

12.  In May, 2003, Plaintiffs met with a counselor and teachers from Wilson to discuss a 504 plan for N.G.  The Wilson employees focused on what could be done to insure that N.G. completed the 10th grade.  One of the suggestions was that N.G. be given extra time to complete her overdue assignments.  *AR, pp. 642-644.*

13.  Accommodations were made for N.G.  The 2002-2003 school year ended in June with N.G. being promoted to the 11th grade.  *AR, p. 646.*

14.  In July, 2003, Plaintiffs began looking for a private school for N.G.  *AR, p. 648.*

15.  Plaintiffs did not re-register N.G. at D.C. Public Schools for the 2003-2004 school year.  Plaintiffs did not notify DCPS that they intended to remove N.G. from the D.C. Public School system.  *AR, pp. 649-650.*

16.  In August, 2003, N.G. was accepted at the St. James School in Hagerstown, Maryland.  She attended St. James for the 2003-2004 school year.  *AR, pp. 310-311.*

17.  St. James describes itself as a "college preparatory boarding school with a rigorous curriculum.  The typical Saint James student should be able to handle the academic rigor of the school and should be planning to attend college.  A student is appropriate for Saint James if s/he can participate fully in all aspects of our program, and enjoy and thrive in the company of peers and adults."  St. James is not a special education facility.  *AR, p. 354.*

18.  After one year at St. James, Plaintiffs removed N.G. from the school because it was too religious and lacked diversity.  *AR, p. 658.*

19.  Plaintiffs then enrolled N.G. in the Buxton School, a boarding school located in Williamstown, Massachusetts.  N.G. attended Buxton for the 2004-2005 and 2005-2006 school years.  N.G. completed her high school education at Buxton.  *AR, pp. 326-331, 334-337, 453-454.*

20.  Buxton describes itself as an "academically rigorous" school, with a "broad and demanding curriculum."  Buxton is not a special education facility.  *AR, pp. 381, 390.*

20.  On November 23, 2004, after N.G. had already begun her junior year at Buxton, Plaintiffs re-registered N.G. as a non-attending student at DCPS.  Plaintiffs requested that N.G. be evaluated for special education services, and signed an evaluation consent form on December 27, 2004.  *AR, pp .255- 256.*

21.  In January, 2005, DCPS conducted a Comprehensive Psychoeducational Evaluation on N.G.  The examiner concluded that overall N.G.'s "academic skills are within the superior range of others at her age level."  *AR, p. 275.*

22.  In May, 2005, DCPS conducted a Clinical Psychological Consultation on N.G. N.G.'s teachers rated her inattention in the mild range, believed her cognitive problems to be "few," and indicated no concerns on the social problems subscale.  The psychologist further noted that "no significant concerns (academic or social/emotional) were noted in school reports although symptoms of ADHD were indicated by both parent and teacher rating scales. *AR, p. 295-296.*

23.  The Multidisciplinary Team ("MDT") met on May 16, 2005 to discuss N.G.'s eligibility for special education services.  After reviewing the Comprehensive Psychoeducational Evaluation, the Clinical Psychological Consultation, and Buxton's school reports, the MDT members determined that N.G. was not eligible for special education services.  *AR, p. 297-298.*

Respectfully submitted,

LINDA SINGER
Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

*/s/ Veronica A. Porter*
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**July 27, 2007**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **MANUEL GOMEZ, et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : **Civ. Action No. 06-312 (EGS)** |
| | : |
| **DISTRICT OF COLUMBIA, et al.,** | : |
| | : |
| **Defendants.** | : |

_____:

## MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION AND BACKGROUND

Plaintiff N.G. is currently a 20-year-old college student.  She attended Lafayette Elementary School and Alice Deal Junior High School in the District of Columbia.  She always enjoyed school and got As and Bs at Lafayette and Deal.  *See Administrative Record filed herein June 9, 2006 ("AR"), pp. 615-617.*  In September, 2002, N.G. began attending 10th grade at Wilson Senior High School ("Wilson").  *AR, p. 95.*

In December, 2002, and early January, 2003, N.G.'s parents requested assistance from N.G.'s Honor's Algebra teacher to help N.G. improve her algebra grade.  Her teacher offered to assist N.G. if she were willing to stay after school, and also suggested that N.G. attend the math center.  The teacher mentioned that N.G. had trouble paying attention in class, "especially when she sits next to [a particular student]."  *AR, pp. 207-209.*

On January 8, 2003, Wilson informed Plaintiffs that N.G.'s grades were poor, and that she would be removed from the WISP program if she did not raise her grades to a 2.0 grade point average.  Wilson offered to meet with N.G. to review her grades with her.  *AR, p. 206.*

In January, 2003, Alexandra Cargo, a clinical psychologist, conducted a psychological and educational evaluation of N.G.  N.G.'s cognitive functioning tests found her to be in the superior range of intellectual aptitude.  *AR, p. 212.*  In her attentional and organizational skills, N.G. was found to "not strongly match either the normal or ADHD population." *AR, p. 214.* Cargo concluded that although N.G. exhibited some mild weakness in this area, "she did not meet the criteria for a formal diagnosis [of ADHD]."  *AR, p. 219.*   Cargo's evaluation stated that N.G. skips class, "talks a lot" at school and tends to "get distracted by her peers."  N.G. informed Cargo that when she "cuts" class she is always with a friend and they generally "go out for food or to someone's house."  *AR, pp. 211-212.*  Cargo concluded that academically, N.G.'s skills "range from average to superior for her age and grade level."  *AR, p. 219.*  Cargo attributed N.G.'s poor grades to excessive absences and missing assignments.  *AR, p. 211.*

In April, 2003, Plaintiffs sent letters to Wilson and informed the school that N.G. was hospitalized, stating, "We realized in the last couple of weeks, with professional help, that she has been very depressed for many months now, but keeping it to herself far too effectively." Plaintiffs requested help to "ensure that she completes all her assignments in order to rescue what we can of this school year."  Plaintiffs requested a meeting with N.G.'s teachers to prepare a 504 Plan.  *AR, pp. 226-227.*

In May, 2003, Plaintiffs met with Wilson personnel to discuss a 504 Plan for N.G.  As requested by the parents, the focus of the meeting was to determine what N.G. and Wilson could do to insure that N.G. completed the 10th grade.  One of the suggestions was that N.G. be given extra time to complete her overdue assignments.  *AR, pp. 642-644.*  The 2002-2003 school year ended in June, with N.G. being promoted to the 11th grade.  *AR, p. 646.*

Plaintiffs did not re-register N.G. to attend a D.C. Public School for the 2003-2004 school year. *AR, pp. 649-650.* Plaintiffs began looking for a private school for N.G. in July, 2003, and N.G. was accepted at the St. James School in Hagerstown, Maryland. Prior to her enrollment at St. James, Plaintiffs did not notify DCPS that N.G. would not be attending a D.C. Public School in the fall. N.G. attended St. James for the 2003-2004 school year. *AR, pp. 648, 310-311.*

St James describes itself as a "college preparatory boarding school with a rigorous curriculum. The typical Saint James student should be able to handle the academic rigor of the school and should be planning to attend college. A student is appropriate for Saint James if s/he can participate fully in all aspects of our program, and enjoy and thrive in the company of peers and adults." St. James is not a special education facility. *AR, p. 354.* After one year at St. James, Plaintiffs removed N.G. from the school because it was too religious and lacked diversity. *AR, p. 658.*

Plaintiffs then enrolled N.G. in the Buxton School, a boarding school located in Williamstown, Massachusetts. Buxton describes itself as an "academically rigorous" school, with a "broad and demanding curriculum." Buxton is not a special education facility. *AR, pp. 381, 390.* N.G. attended Buxton for the 2004-2005 and 2005-2006 school years, and completed her high school education at Buxton. *AR, pp. 326-331, 334-337, 453-454.*

On November 23, 2004, after N.G. had already begun her junior year at Buxton, Plaintiffs re-registered N.G. as a non-attending student at DCPS. Plaintiffs requested that N.G. be evaluated for special education services, and signed an evaluation consent form on December 27, 2004. *AR, pp .255- 256.*

In January, 2005, DCPS conducted a Comprehensive Psychoeducational Evaluation on N.G. The examiner concluded that overall N.G.'s "academic skills are within the superior range

of others at her age level." *AR, p. 275.*   In May, 2005, DCPS conducted a Clinical

Psychological Consultation on N.G.  N.G.'s teachers rated her inattention in the mild range,

believed her cognitive problems to be "few," and indicated no concerns on the social problems

subscale.  The psychologist further noted that "no significant concerns (academic or

social/emotional) were noted in school reports although symptoms of ADHD were indicated by

both parent and teacher rating scales." *AR, p. 295-296.*

The Multidisciplinary Team ("MDT") met on May 16, 2005 to discuss N.G.'s eligibility

for special education services.  After reviewing the Comprehensive Psychoeducational

Evaluation, the Clinical Psychological Consultation, and Buxton's school reports, the MDT

members determined that N.G. was not eligible for special education services. *AR, p. 297-298.*

On June 30, 2005, Plaintiffs filed an administrative due process hearing request.

Hearings were held in September, November, and December, 2005, and in January, 2006.  A

Hearing Officer's Determination ("HOD") issued January 23, 2006.  The Hearing Officer

determined that N.G. was not eligible for special education services during the 2002-2003 school

year, was not entitled to compensatory education, was not eligible for services in 2005, and was

not entitled to tuition reimbursement.

Plaintiffs filed their Motion for Summary Judgment ("Motion") herein on June 29, 2007.

In their Motion, Plaintiffs assert that 1) the Hearing Officer erred in finding that DCPS did not

violate the "child find" provision if the Individuals with Disabilities Education Improvement Act

of 2004 ("IDEIA"), 20 U.S.C. §1412(a)(3); 2) the Hearing Officer erred in finding that DCPS

fulfilled its 504 obligations; 3) the Hearing Officer erred in denying tuition reimbursement; and

4) the Hearing Officer erred in affirming DCPS' determination of ineligibility for special

education for 2005.

# ARGUMENT

## I.    The Standards of Review Applicable in This Case

### A.    The requirements for summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C.Cir. 1994).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  See id.; see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C.Cir. 1987).

In cases such as this, the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §1400 et seq. ("IDEIA"), dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When (as here) neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

**B.  The criteria for review of administrative decisions under IDEIA**

IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them."  Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ., 2001 U.S.Dist.LEXIS 6994, *12 (N.D.Ill. March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  Angevine v. Smith, 292 U.S.App.D.C. 346, 959 F.2d 292, 295 (1992); Kerkam v. McKenzie, 274 U.S.App.D.C. 139, 862 F.2d 884, 887 (1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  Lyons v. Smith, supra, 829 F.Supp. at 418. As recently expressed in S.H. v. State-Operated School Dist. of the City of Newark, 336 F.3d 260, 269-271 (3d Cir. 2003), a district court reviewing an HOD is "required to defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record".  This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices.  Rowley, supra, 458 U.S. at 207-08.

Accordingly, before this Court may reverse the hearing officer's decision at issue, the Plaintiffs must show by a "preponderance of the evidence," giving the hearing officer's finding "due weight," that the hearing officer was wrong.

## II. The Hearing Officer Correctly Determined there was no Child Find Violation in 2003.

### A. Applicable laws

The purpose of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA") is to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE"). *20 U.S.C. §1400(d)(1)(A).* The term "child with disability" means a child

> with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this title [20 USCS §§ 1400 et seq.] as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; **who, by reason thereof, needs special education and related services.**

*20 U.S.C. §1401(3)(A)(i)* Emphasis added.   IDEIA defines related services as:

> transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

*20 U.S.C.A. § 1401 (26)(A).*

Thus, in order to be eligible to receive services pursuant to IDEIA, one must first show that a child is disabled, **and that the disability affects his learning capabilities.**

The child find provision of IDEIA provides that "all children **with disabilities**…and who are in need of special education and related services, are identified, located, and evaluated." *20 U.S.C. §1412(a)(3)(A).*

Therefore, in order to conclude that DCPS violated the child find provision, N.G. must be determined to have been a child with a disability that affected her learning capabilities, and in need of special education and related services.

B. <u>There was no evidence provided to DCPS in 2003, that showed N.G. had a disability that affected her learning capabilities.</u>

When N.G. attended Deal she earned mostly As and Bs on her report card. However, once she began school at Wilson for the 2002-2003 school year, her grades began to suffer. There is no indication in the record to show that N.G. acted out in class, or that she had problems in the classroom. The only evidence DCPS had at the time to distinguish her performance at Deal from her performance at Wilson was that N.G. began skipping school once she became a high school student.

In February, 2003, personnel at Wilson received a copy of Alexandra Cargo's January, 2003 Psychological and Educational Evaluation. DCPS learned from that evaluation that N.G.'s cognitive functioning tests found her to be in the superior range of intellectual aptitude, and that academically her skills ranged from average to superior for her age and grade level. Regarding her attentional and organizational skills, Cargo found some mild weakness in the area, but concluded that she did not meet the criteria for a formal diagnosis of ADHD. Cargo's report further stated that N.G. talked a lot at school, and that she tended to get distracted by her peers. Finally, Cargo attributed N.G.'s poor graded to her excessive absences and missing assignments. Indeed, by N.G.'s own admission, she cut class generally to go out for food or to someone's

house.   As of February, 2003, there was no evidence that N.G. had a disability that affected her learning capabilities.

In April, 2003, DCPS learned that N.G. was hospitalized for depression.  Depression is not one of the enumerated disabilities listed in 20 U.S.C. §1401(3)(A)(i).  Moreover, there is no evidence that this depression played a role in N.G. skipping school and missing assignments.

In May, 2003, Dr. Carol Robbins informed DCPS that she had diagnosed N.G. with depression and ADHD.  She did not, however, state that N.G. required special education services.  Rather, she stated that N.G. would benefit from "standard educational accommodations (a 504 Plan) such as being seated near the front of the classroom, being provided organizational assistance, being reminded to hand in homework assignments, being provided academic assistance/tutoring when needed, and being given extended time on tests."  Dr. Robbins further states that N.G. is a "very capable and intelligent young woman who…will be able to succeed academically and reach her intellectual potential."  *See AR, p. 250.*  It is important to note that Dr. Robbins' report did not state that N.G.'s depression and ADHD caused N.G. to skip school to hang out with her friends.

At Dr. Robbins' suggestion and Plaintiffs' request, Wilson held a 504 Plan meeting in May to discuss how best to assist N.G. in completing her school work so she could be promoted to the 11th grade.  Some accommodations were made, and N.G. was promoted to the 11th grade.

Plaintiffs assert that "DCPS largely conceded 2003 eligibility at the due process hearing." *See Motion, p. 8.*  Plaintiffs' assertion is based upon the testimony of Social Worker Gloria Everett.  However, Ms. Everett also testified that that opinion was based solely on information from the parents.  *AR, p. 742-743.*  Ms. Everett's opinion was not based upon any reports she

reviewed.  Furthermore, the Hearing Officer noted the Ms. Everett was merely providing her own opinion and not a decision made by an MDT team.  *AR, p. 746.*

Plaintiffs further argue that the hearing officer "ignored undisputed evidence of record" in determining that there was no child find violation. *See Motion,  p. 4.*  This allegation is plainly false.  In the Hearing Officer's 20-page HOD, he specifically addresses each piece of evidence presented to him and explains why he reached the conclusions he reached.  The Hearing Officer correctly determined that there was no child find violation in 2003.  His conclusions are plausible and reasonable, and the HOD is owed deference by the Court.  Accordingly, the HOD must be upheld.

## III.  The Hearing Officer Correctly Determined that DCPS Properly Responded to the Request for 504 Accommodations.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability…be denied the benefits of…any program or activity receiving Federal financial assistance."  29 U.S.C. §794.  The Act defines an individual with a disability as one who has a physical or mental impairment which substantially limits one or more of such person's major life activities or acts as an impediment to employment.  *29 U.S.C.A. § 705 (20)(A) and (B).*

Pursuant to the provisions of Section 504 N.G. does not qualify as an individual with a disability and was not entitled to a 504 Plan.  Nevertheless, within days of being notified by Dr. Robbins that N.G. needed accommodations, and after receiving a request from the parents to develop a 504 Plan to "ensure that she completes all her assignments in order to rescue what we can of this school year," DCPS did hold a 504 meeting.

Plaintiffs argue DCPS did not fulfill its obligations under the Rehabilitation Act and did not discuss or provide accommodations.  Assuming, arguendo, that N.G. was entitled to receive services pursuant to the Rehabilitation Act, this allegation is plainly wrong.  By her own admission, the mother stated that that the guidance counselor raised the possibility of an alternative testing format for N.G.  *See AR, p. 65.*   The meeting members also discussed N.G. completing a lesser amount of work that would still enable her to earn passing grades.  They further discussed permitting N.G. to drop her algebra class without penalty, while allowing her to retake the course in the fall.  N.G. was eventually allowed to drop her algebra class.  *Id.*

Even though DCPS was not required to provide accommodations to N.G. because she did not qualify as an individual with a disability pursuant to the provisions of the Rehabilitation Act, DCPS still accommodated N.G. so that she was able to be promoted to the 11th grade.  The Hearing Officer correctly determined that DCPS properly responded to the request for 504 accommodations.  Accordingly, the HOD must be upheld.

## IV.  The Hearing Officer Correctly Determined that Plaintiffs are not Entitled to Tuition Reimbursement.

20 U.S.C. §1412(a)(10)(C)(i) provides that:

Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

20 U.S.C.A. §1412(a)(10)(C)(ii) provides that:

If the parents of a child with a disability, **who previously received special education and related services under the authority of a public agency**, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.  [Emphasis added.]

See also 34 C.F.R. § 300.403(c).

An intrinsic element of this section of IDEIA is that the child has already been deemed eligible to receive special education services.  N.G. has **never** been determined eligible for special education services.  She neither requested nor received special education and related services when she attended D.C. Public Schools.  In addition, neither St. James nor Buxton provided special education services to N.G.  Indeed, both schools are considered academically rigorous.   Plaintiffs are not entitled to tuition reimbursement, because there had been no denial of FAPE, because N.G. was not eligible for special education services.

Parents who unilaterally decide to place their disabled child in private school without consent of local school officials "do so at their own financial risk." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15, (1993) (quoting Burlington, 471 U.S. at 373-- 74 (1985)). Plaintiffs did not re-register N.G. at Wilson after she completed the 10th grade.  Rather, they began searching for a private school in July 2003, and enrolled N.G. at St. James in August, 2003, without first notifying DCPS.  As a result, Plaintiffs are not entitled to tuition reimbursement.  Accordingly, the request for tuition reimbursement must be denied.

**V.   The Notice Requirement Plaintiffs Rely Upon is Inapplicable in this Case**

Plaintiffs argue that the Hearing Officer erred in his application of the notice requirement found in 20 U.S.C. 1412(a)(10)(C)(iii), because DCPS did not first give notice to the parents required by 20 U.S.C. §1415.  However, 20 U.S.C. §1415 applies only if DCPS refuses to initiate or change "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child."  A "refusal" implies that there was first a request.

In 2003, Plaintiffs never requested that DCPS evaluate N.G. for eligibility for special education services. The only request made by Plaintiffs and their doctor was that DCPS provide accommodations for N.G. Those accommodations were made, and N.G. was promoted to the 11th grade.

## VI. The Hearing Officer Correctly Affirmed DCPS' 2005 Ineligibility Decision

Plaintiffs argue that DCPS' ineligibility decision is faulty because they did not review "any information about N.G.'s experiences within its own system." *Motion, p. 14.* That is, Plaintiffs believe DCPS should have taken into consideration N.G.'s academic performance during her 2002-2003 school year at Wilson. That argument makes no sense. A special education eligibility determination should be based upon a student's current educational and behavioral status, not on events that occurred several years earlier. Indeed, 20 U.S.C.A. §1414(c)(1) provides that

> As part of an initial evaluation… the IEP Team and other qualified professionals, as appropriate, shall--
> **(A)** review existing evaluation data on the child, including--
> **(i)** evaluations and information provided by the parents of the child;
> **(ii) current** classroom-based, local, or State assessments, and classroom-based observations; and
> **(iii)** observations by teachers and related services providers. [Emphasis added.]

In this case, the MDT met during the spring, 2005. At the time, N.G. was attending Buxton for the 2004-2005 school year. As part of the evaluation process, the MDT properly reviewed grades, classroom observations and teacher comments from Buxton. Additionally, DCPS reviewed a January, 2005, Psychoeducational Evaluation and a May, 2005, Clinical Psychological Consultation. Based upon that current information, DCPS correctly found N.G. ineligible for special education services, and the Hearing Officers' affirmation of that decision was correct.

**CONCLUSION**

The amount of deference given to an administrative hearing officer's decision is based in part on whether the findings reached were "thorough and complete." See, e.g., <u>Adams v. State of Oregon</u>, 195 F.3d 1141, 1145 (9th Cir. 1999). See also <u>S.H. v. State-Operated School Dist. of the City of Newark</u>, 336 F.3d 260, 270 (3d Cir. 2003). In this case, the administrative findings and conclusions were both thorough and complete, were legally correct, and should be summarily affirmed.

Respectfully submitted,

LINDA SINGER
Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**July 27, 2007**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        :
MANUEL GOMEZ, et al.,                   :
                                        :
        Plaintiffs,                     :
                                        :
            v.                          :   Civ. Action No. 06-312 (EGS)
                                        :
DISTRICT OF COLUMBIA, et al.,           :
                                        :
        Defendants.                     :
_____:

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

(Paragraph numbers correspond to the paragraph numbers in Plaintiffs' statement of material facts.)

9.  This allegation is not a fact, but the opinion of Plaintiffs' counsel.

14.  This statement stems from the hearing testimony of N.G.'s mother.  However, her testimony is unclear as to whom, if anyone, she spoke about N.G.  N.G.'s mother says she "went in to talk to them" but does not say that she actually spoke to anyone.   It is also unclear for whom she left notes, and whether these persons actually received the notes.

> I went in to talk to them and those teachers that I could not visit, I mean, I went to the counselor and the vice principal.  I remember.  And those that I didn't, I didn't speak to directly, I wrote notes and left in their cubby holes.

*Administrative Record ("AR") p. 620, lines 13-18.*

20.  The report card referred to (*AR, p. 92)* includes grades and absences for four advisory periods, not just for the first advisory period.  Therefore, it is unclear how many absences N.G. had during the first advisory period.

27.  With one exception—the reference to N.G.'s restlessness—these statements are conclusions made by Dr. Cargo in her psychological and educational evaluation. *AR, pp. 219-220.*  As to N.G.'s restlessness, Dr. Cargo stated that "her parents note her high energy level and restlessness," but concluded that **she was able to curb this restlessness in the testing situation.** *AR, p. 219.*  Dr. Cargo further concluded that N.G. did not meet the criteria for a formal diagnosis [of ADHD].  Rather she attributed N.G.'s loss of focus in class to "interest in her peers and their interactions more than to any specific attention difficulties."  *Id.*

In addition to the statements noted by Plaintiffs in paragraph 27, Dr. Cargo also concludes that N.G. is capable of doing good academic work, is functioning in the superior range intellectually, and demonstrates "good practical judgment, abstract verbal reasoning, fluid reasoning, awareness of environmental detail and auditory working memory." *Id.*  Dr. Cargo also concluded that N.G. does not exhibit major signs of depression or anxiety.  *AR, p. 220.*

44.  The "hand-delivered" letters were not actually "hand-delivered", but were put into mail slots or the teachers' "cubby holes." *AR, p. 638.*

49.  This statement is not a "fact", but an opinion of Dr. Robbins.  Dr. Robbins further stated that she did not know whether the environment she believed N.G. needed "could have been available" in the D.C. public schools.  *AR, p. 824.*

74.  This statement is not a fact, but a speculative opinion of the St. James School.

85.  The allegation "she was appropriately placed at Buxton" is not a fact but a legal conclusion.

127.  This statement is correct. However, Plaintiffs' counsel did not ask the DCPS witness to identify specific classes N.G. would have attended or any accommodations N.G. would have received had she returned to Wilson.

Respectfully submitted,

LINDA SINGER
Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

*/s/ Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
**veronica2.porter@dc.gov**

**July 27, 2007**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                    |   |                               |
|------------------------------------|---|-------------------------------|
| **MANUEL GOMEZ, et al.,**          | : |                               |
|                                    | : |                               |
| **Plaintiffs,**                    | : |                               |
|                                    | : |                               |
| **v.**                             | : | **Civ. Action No. 06-312 (EGS)** |
|                                    | : |                               |
| **DISTRICT OF COLUMBIA, et al.,**  | : |                               |
|                                    | : |                               |
| **Defendants.**                    | : |                               |
|                                    | : |                               |

_____

### <u>ORDER</u>

On consideration of Defendants' cross motion for summary judgment and opposition to Plaintiffs' motion for summary judgment, the response thereto and the record in this proceeding, it is, this _____ day of _____, 2007,

**ORDERED**, That Defendants' cross motion for summary judgment is GRANTED; it is

**FURTHER ORDERED**, That the January 23, 2006, hearing officer's decision is affirmed; and it is

**FURTHER ORDERED**, That Plaintiffs' complaint herein is dismissed with prejudice.


_____
United States District Judge