# United States District Court
# for the District of Columbia

| | |
|---|---|
| **N.G.**, *et al.*,<br><br>　　　　**Plaintiffs**<br><br>　　v.<br><br>**CLIFFORD B. JANEY, Superintendent, District of Columbia Public Schools,** *et al.*,<br><br>　　　　**Defendants** | **Civil Action No. 06-00312 (EGS)** |

### PLAINTIFFS' STATEMENT OF GENUINE ISSUES

　　　　Plaintiffs N.G., Manuel Gomez ("Gomez") and Sylvia Correa ("Correa") (collectively, "plaintiffs"), through counsel, respectfully submit the following statement of genuine issues pursuant to LCvR 7(h).  The identified disputed issues are numbered to correspond to the disputed items in the statement of alleged undisputed material facts which accompanied defendants' motion for summary judgment.

　　　　1.　　　　This "fact" is not stated completely accurately.  When plaintiff N.G.'s parents first brought her disabling conditions to the attention of the District of Columbia Public Schools ("DCPS"), she was a 15-year-old 10th grader attending Woodrow Wilson Senior High School ("Wilson") as alleged; however, N.G.'s parents later revived the process of requesting special education in November 2004 (as acknowledged in ¶¶15 and 20 of defendants' statement of material facts).  At that time, she was 17 years old and attending Buxton School.  (¶19 of defendants' statement of material facts)

　　　　2.　　　　Disputed with respect to the characterization of N.G. as an "excellent" student at Deal Junior High School and the consequent implication that she had no problems that manifested themselves in the school setting.  N.G.'s mother, Sylvia Correa, testified at the due process hearing

that N.G. received a C in math in 7th grade (a downturn from her prior performance in elementary school); that in 8th grade she began to report a dislike of school for the first time and engaged in behavior so unacceptable that she was sent to another school to complete the year; and that in 9th grade N.G. was hospitalized for two weeks (and accordingly missed school) following a suicide attempt. (R. 617-621)

12.     Disputed. The May 2003 encounter, while billed as "504 plan" meeting, discussed only modest adjustments to the school's routines (such as allowing her additional time to complete overdue homework) to help N.G. pass her courses and be promoted to 11th grade. It was not a proper meeting under §504 of the Rehabilitation Act, whose processes commence with a determination whether a student is disabled, and then move on to determine the full range of accommodations the student requires and how those will be implemented. The meeting did not address the accommodations Dr. Robbins had recommended, such as being seated near the front of the classroom, being provided organizational assistance, being reminded to hand in homework assignments, being provided academic assistance/tutoring when needed, being given extended time on tests, use of a crisis counselor, and/or having a safe place to go if N.G. became overwhelmed or upset during the school day. (R. 250-251, 642-644)[1]

13.     Disputed. The cited page of the record does not support the assertion that DCPS made accommodations for N.G. as that term is understood within the meaning of either the

---

[1] *See also* United States Department of Education Memorandum from Jeannette J. Lim, Acting Assistant Secretary for Civil Rights, Subject: *Clarification of School Districts' Responsibilities to Evaluate Children with Attention Deficit Disorders (ADD)*, created 1/1/00, revised 4/18/06 and found at http://www.wrightslaw.com/info/add.eval.ocrmem.htm. In the memorandum, the Acting Assistant Secretary states that children thought to have ADD **must** be evaluated by their school districts; if the school district declines to do so, if must notify the parents of their due process rights. If the school system determines that the student has a disability which requires services, appropriate adjustments to the child's educational program are required. The "504 plan" meeting to which DCPS refers did not remotely resemble this outline.

2

Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.* or the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* Rather, Ms. Correa testified that at the end of the 2002-03 school year, the staff at Wilson agreed to accept certain overdue assignments in order to allow N.G. to pass her 10th grade courses and be promoted to 11th grade. (R. 643-645)

17.   Disputed with respect to the allegation that Saint James School is not a special education facility. Saint James is not formally certified as a special education facility; however, "special education" is specially designed instruction to meet the unique needs of a child with a disability, and it can be delivered in any appropriate setting. 20 U.S.C. §1401(29). Saint James provided a program consisted with N.G.'s identified needs. (R. 353-379)

20.   Disputed with respect to the allegation that Buxton is not a special education facility. Buxton is not formally certified as a special education facility; however, "special education" is specially designed instruction to meet the unique needs of a child with a disability, and it can be delivered in any appropriate setting. 20 U.S.C. §1401(29). Buxton provided a program consisted with N.G.'s identified needs. (R. 380-439)

23. Disputed. The multidisciplinary team members did not determine that N.G. was not eligible for special education services, only the DCPS members of the team did so. The decision was made over the protests of other team members; specifically, her parents and representative, and was concededly made on incomplete information, in that some medical information had been received but not yet reviewed, while other information (treatment/progress notes from her therapist) was said to be needed before DCPS's clinical psychologist could make a diagnosis. The DCPS members of the team also refused to consider N.G.'s full academic history, thus preventing them from understanding the true nature of her disabilities and the strategies that effectively addressed them. (R. 293-300)

/s/   *Diana M. Savit*

Diana M. Savit #244970
**SAVIT & SZYMKOWICZ, LLP**
7315 Wisconsin Avenue
Suite 601N
Bethesda, Maryland 20815
(301) 951-9191
Attorneys for plaintiffs