UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    :
**MANUEL GOMEZ, et al.,**                           :
                                                    :
      **Plaintiffs,**    :
                                                    :
      **v.**             :  Civ. Action No. 06-312 (EGS)
                                                    :
**DISTRICT OF COLUMBIA, et al.,**                   :
                                                    :
      **Defendants.**   :
_____:

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM
OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In Plaintiffs' Opposition to Defendants' Motion for Summary Judgment filed herein August 29, 2007 ("Opposition"), Plaintiffs argue that the District of Columbia Public Schools ("DCPS") (1) violated the "child find" provision of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1412(a)(3)(A); (2) erroneously found N.G. ineligible for special education services in 2005; and (3) did not provide proper notice to the parents.

**I.  There was no "Child Find" Violation in 2003**

Plaintiffs argue that DCPS had sufficient information in 2003 to trigger "child find" obligations. *Plaintiffs' Opposition, pp. 9-12.* Defendants addressed this issue in their Cross Motion for Summary Judgment ("Motion"), but the argument bears repeating.

The child find provision of IDEIA requires that "all children **with disabilities**…and who are in need of special education and related services, are identified, located, and evaluated." *20 U.S.C. §1412(a)(3)(A).* Therefore, in order to conclude that DCPS violated the child find

provision, N.G. must be determined to have been a child with a disability **that affected her learning capabilities**, and was in need of special education and related services.

Prior to attending Wilson Senior High School for the 2002-2003 school year, N.G. was an A/B student. N.G.'s grades dropped at Wilson, but a February 2003 psychological and educational evaluation attributed that change not to a disability, but to N.G.'s tendency to skip school to hang out with her friends. Indeed, the same evaluation found N.G. to have superior academic skills.

In April, 2003, DCPS learned that N.G. was hospitalized for depression. However, depression is not one of the enumerated disabilities listed in 20 U.S.C. §1401(3)(A)(i). Moreover, there is no evidence that this depression played a role in N.G.'s skipping school and missing assignments. Since depression is not deemed a disability, and there is no evidence that depression affected N.G.'s learning capabilities, N.G.'s depression did not trigger any "child find" obligations.

Dr. Robbins informed DCPS in May, 2003, that she had diagnosed N.G. with attention deficit hyperactive disorder ("ADHD") and depression. Nevertheless, Dr. Robbins stated that N.G. was a "very capable and intelligent young woman" (*Administrative Record, p. 250)*, who would benefit from standard educational accommodations (a 504 Plan). Dr. Robbins did not state that N.G. needed to be evaluated for special education services. Since DCPS was informed by N.G.'s own doctor that N.G. was intelligent, capable, and would succeed academically if N.G. received a 504 Plan, this recent information did not trigger any "child find" obligations. Instead, following the advice of Dr. Robbins, DCPS created educational accommodations for N.G. to facilitate her promotion to the 11th grade.

The hearing officer's conclusion that DCPS did not violate the "child find" provision of IDEIA was legally sufficient, and the HOD must be upheld.

## II. The Hearing Officer Correctly Affirmed DCPS' 2005 Ineligibility Decision

Plaintiffs argue that DCPS' ineligibility decision was in error because the decision was based upon incomplete information; i.e., DCPS needed medical records, yet refused to table the eligibility decision until the records were obtained. Plaintiffs assert that they made this argument in their summary judgment motion, and that Defendants "wisely" chose not to defend DCPS' position. *Plaintiffs' Opposition, p. 13.*

In Plaintiff's Motion for Summary Judgment filed herein June 29, 2007, Plaintiffs allege that (1) DCPS "said it did not have sufficient information about her [N.G.] disabling conditions or their impact upon her educational performance" (p. 14); (2) faulted Plaintiffs for the absence of information (p. 15); and (3) claimed that "what was provided was inadequate" (p. 15). **None** of these accusations was supported by cited references to the administrative record.

DCPS' position, which Defendants did defend (see Defendants' Motion, p. 20), and will not be reiterated herein, is that the ineligibility decision was made in accordance with the provisions of IDEIA.

## III. The Notice Requirements Plaintiffs Rely Upon do not Entitle them to Tuition Reimbursement

Relying upon 20 U.S.C. §1412(a)(10)(C)(iii), the hearing officer denied Plaintiffs request for tuition reimbursement because Plaintiffs did not give proper notice to DCPS prior to removing N.G. from Wilson, and unilaterally placing her in a private school. Plaintiffs argue that before that notice provision of IDEIA may be invoked to bar tuition reimbursement, DCPS must show that they provided Plaintiffs a copy of the procedural safeguards; i.e., given Plaintiffs notice of the notice requirements.

20 U.S.C. §1415(d)(1)(A) provides that "a copy of the procedural safeguards available to the parents of a child with a disability shall be given to the parents only one time a year, except that a copy also shall be given to the parents **(i)** upon initial referral or **parental request for evaluation**" (emphasis added).

Even if this Court accepts Plaintiffs "notice of notice" argument, Plaintiffs are still not entitled to tuition reimbursement. The facts in this case show that the parents **never requested an evaluation** prior to removing N.G. from Wilson and unilaterally placing her in a private school. Since the parents never requested that N.G. be evaluated for special education services, DCPS was not required to provide a copy of the procedural safeguards. Therefore, 20 U.S.C. §1415(d)(1)(A), which Plaintiffs rely upon, is inapplicable in this case, and the hearing officer's decision to deny tuition reimbursement pursuant to 20 U.S.C. §1412(a)(10)(C)(iii) was entirely appropriate.

**IV. Reply to Plaintiffs' Response to Defendants' Statement of Material Facts**

Plaintiffs do not dispute Defendants' statement of material facts so they must be deemed conceded as a matter of law. Rather, Plaintiffs argue that Defendants' statement of material facts is not "material" because they do not go "to the heart of the issues in this case." *See Plaintiffs' Opposition pp. 7-9.* Plaintiffs' position is disingenuous.

At issue in this case is Plaintiffs' entitlement to tuition reimbursement after unilaterally placing N.G. into two private schools that did not provide special education services to her. In their statement of material facts, Defendants pointed out that (1) N.G. was found ineligible for special education services; (*See Defendants' Motion, Statement of Material Facts, para. 23*); (2) that St. James is not a special education facility but a college preparatory boarding school with a

4

rigorous curriculum (*Id., para. 17)*; *and* (3) that Buxton is not a special education facility but an academically rigorous school with a broad and demanding curriculum (*Id., para. 20).*

The Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA") provides that a parent of a child with a disability is entitled to tuition reimbursement if the child previously received special education and related services under the authority of a public agency. (*See 20 U.S.C. §1412(a)(10)(C)(ii)*).  N.G. did not previously receive special education services from the District of Columbia Public Schools ("DCPS").  Moreover, the schools where N.G. was placed do not provide special education service, and are considered academically rigorous. Defendants' facts are "material" because they show that Plaintiffs are not entitled to tuition reimbursement.

Similarly, Plaintiffs discount Defendants' facts concerning Dr. Cargo's psychological and educational evaluation as immaterial. *Plaintiffs' Opposition, p. 8.*   In their statement of facts, Defendants pointed out that Dr. Cargo's evaluation concluded that N.G. possessed superior academic skills, and attributed N.G.'s poor grades to her penchant for cutting class to hang out with her friends.  *See Defendants' Motion, Statement of Material Facts, paras. 5-9.*  These facts are "material" because they show the information DCPS had available at that time, and demonstrate that DCPS' actions concerning N.G. were entirely appropriate.

Defendants' statement of facts is "material," does go "to the heart of the matter," and fully supports an entry of judgment in Defendants' favor.

## **CONCLUSION**

For the foregoing reasons, and for reasons discussed in previous filings, the Hearing Officer's Determination must be upheld and Plaintiffs' motion for summary judgment must be denied.

        Respectfully submitted,

        LINDA SINGER
        Attorney General for the
          District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        */s/ Edward P. Taptich*_____
        EDWARD P. TAPTICH (012914)
        Section Chief
        Equity Section Two

        */s/ Veronica A. Porter*_____
        VERONICA A. PORTER (412273)
        Assistant Attorney General
        Civil Litigation Division
        Equity Section Two
        441 Fourth Street, N.W., Sixth Floor South
        Washington, D.C.  20001
        (202) 724-6651 (phone)
        (202) 727-3625 (facsimile)
        veronica2.porter@dc.gov

**September 26, 2007**